AO 91 (Rev. 11/11) Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
Middle District of Florida

| | |
|---|---|
| United States of America<br>v.<br>NACOE RAY BROWN<br><br>*Defendant(s)* | ) ) ) ) Case No.<br>) ) )    6:22-mj- 1792 |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.
On or about the date(s) of __June 28, 2022__ in the county of __Orange__ in the __Middle__ District of __Florida__, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 2113(a) | Bank robbery. |

This criminal complaint is based on these facts:

See attached affidavit.

☑ Continued on the attached sheet.

_____
Complainant's signature

Jonathan B. Hannigan, Special Agent - FBI
*Printed name and title*

Sworn to before me via Zoom and signed by me pursuant to Fed.R.Crim. P. 4.1 and 4(d)

Date: 8/10/22

_____
Judge's signature

City and state: Orlando, FL

LESLIE HOFFMAN PRICE, U.S. Magistrate Judge
*Printed name and title*

STATE OF FLORIDA            Case No: 6:22-mj- 1792

COUNTY OF ORANGE

## AFFIDAVIT IN SUPPORT OF COMPLAINT

I, Jonathan B. Hannigan, being duly sworn, hereby depose state as:

### BACKGROUND

1. I am employed as a Special Agent (SA) with the Federal Bureau of Investigation (FBI), United States Department of Justice, and have been employed in this capacity since August of 2019. I am currently assigned to a unit that investigates bank robbery, Hobbs Act violations, criminal enterprises and violent gangs out of the Tampa Field Office, Orlando Resident Agency. Prior to becoming a federal agent, I worked as an FBI analyst for four years, focusing on international biometrics sharing and counter-terror records management.

2. The facts set forth in this affidavit come from my personal observations, training and experience, and information obtained from other agents, witnesses, third party records, and databases. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrants and does not set forth all of my knowledge about this matter.

### PURPOSE OF AFFIDAVIT

3. Based on the facts set forth in this affidavit, there is probable cause to believe that a violation of 18 U.S.C. § 2113, Bank Robbery, has been

committed in the Middle District of Florida by Nacoe Ray Brown (BROWN) on or about June 28, 2022.

## INVESTIGATIVE SUMMARY

4. On June 28, 2022, at approximately 12:47 p.m., the Belle Isle Police Department (BIPD) responded to a reported robbery at the McCoy Federal Credit Union, located at 1900 McCoy Road, Belle Isle, Florida 32809. This credit union is insured by the National Credit Union Administration. Officers arrived on scene and met with the victim teller, J.L., who explained the robbery.

5. J.L. states that he was working at a teller station when the robber approached his window. J.L. described the robber as a black male, approximately six feet tall, weighing approximately 250 pounds, and wearing a white long-sleeve button down shirt, a black tie, blue or black pants, a baseball cap, sunglasses, a surgical style facemask, and plastic gloves. J.L. noticed that the robber was holding a note and a counterfeit $100 bill, which he presented to J.L., requesting it be changed for small bills. The $100 bill was clearly counterfeit to J.L. and stated "play money" across the front of the bill. J.L. told the robber that the bill was fake, and the robber responded for J.L. to read the note.

6. J.L. reviewed the handwritten note, which read "Keep smiling. I have a gun. Give me all of your 100's, 50's, 20's, 20's 5's. No 1's. Don't push alarm!" J.L. opened his top drawer, which contained $200 in bait money, and

2

placed the bait money, cash, and demand note into a plastic bag provided by the robber. The robber then left the bank on foot with $4,296 in stolen cash. An image of the robbery is depicted below:



7.    As the robber ran from the bank, L.R., another bank employee who was located in a conference room, took notice of him. L.R. watched the robber run across the street to a gas station. L.R. watched carefully because she thought the robber's behavior was suspicious. L.R. then learned that the bank was just robbed by him. L.R. watched the robber after he left the gas station and headed towards the hotel adjacent to the bank. The robber had changed clothes and was no longer wearing the mask, hat, or sunglasses.

3

8. Immediately after the robbery, the bank notified law enforcement. Soon thereafter, BIPD Officer John Gargano arrived and observed BROWN, who matched the robber's description, as he was walking into the hotel adjacent to the bank. Officer Gargano and other BIPD officers entered the hotel lobby to ascertain where the suspect went. While speaking with hotel employees, BROWN was observed getting off an elevator with three items of luggage. BROWN was detained for a show-up identification procedure.

9. L.R. was informed that the police had a person detained who may or may not be the robber. Upon being driven past him, L.R. positively identified BROWN as the person who robbed the bank, stating that she was "100% sure."

10. Following the positive identification of BROWN as the robber, he was placed under arrest and an inventory of his property was conducted. Officers recovered the following items in BROWN's possession:

    a. One plastic bag containing the exact sum of money stolen in the robbery – $4,296;

    b. A demand note identical to that which was detailed by J.L. that read "Keep smiling. I have a gun. Give me all of your 100's, 50's, 20's, 20's 5's. No 1's. Don't push alarm!";

    c. Three counterfeit $100 bills that state "play money" across the front;

    d. White shorts and a white shirt that appeared to be sweaty, both of which were consistent with the robber's clothing.

4

11. Additionally, police searched the men's restroom at the gas station where L.R. observed the robber initially flee. Inside the garbage of the restroom, they recovered a black hat, sunglasses, face mask, and a dark blue tie, as well as a pair of disposable gloves, all of which matched the robber's disguise.

12. After BROWN's arrest, he made statements referencing an attorney that were captured on BIPD body worn camera. BIPD acknowledged BROWN's statements and terminated any relevant questioning. BIPD Deputy Chief Grimm sat with BROWN while his belongings were being inventoried. During this time, BROWN began to make spontaneous utterances about having been previously incarcerated for bank robbery, the fact that he was actively on federal supervised release for bank robbery, and began to speak about the robbery in question. Chief Grimm advised BROWN that due to his statements regarding an attorney, if BROWN wished to speak about the robbery he would need to speak with Sergeant Ferraiuolo, who was wearing a body worn camera. BROWN agreed to be interviewed on camera.

13. BROWN was then transported to BIPD where he was advised of his rights, waved his rights, and admitted to committing the bank robbery at the McCoy Federal Credit Union that day.

## CONCLUSION

14. Based on the foregoing, I submit that probable cause exists to charge BROWN for the McCoy Federal Credit Union robbery that occurred on June 28, 2022, in violation of 18 U.S.C. § 2113(a).

*[signature]*

Special Agent Jonathan B. Hannigan
Federal Bureau of Investigation

Affidavit submitted by email and attested
to me as true and accurate by telephone
conference or video conference consistent
with Fed. R. Crim. P. 4.1 and 41(d)(3)
before me this 10th day of August, 2022.

*[signature]*

LESLIE HOFFMAN PRICE
United States Magistrate Judge

6